UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
Case No. 5:21-cv-00134-GNS-LLK

*FILED ELECTRONICALLY*

JARED KENNEDY                                                                PLAINTIFF

v.

AARON ACREE, et al.
and
GARY HICKS
and
MICAH KAMINSKI                                                            DEFENDANTS

---

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

Defendant, Aaron Acree, in his individual and official capacity, through counsel, respectfully submits the following Memorandum in Support of his Motion for Summary Judgment:

**INTRODUCTION**

Plaintiff filed this lawsuit against Sheriff Aaron Acree, Deputy Gary Hicks, and Officer Micah Kaminski, alleging constitutional and state law violations arising from a September 19, 2020 encounter with law enforcement in Trigg County, Kentucky. *See* [R. 27, ¶¶ 1-5]. On that evening, Plaintiff led law enforcement on a dangerous pursuit that lasted approximately 20 minutes and covered over 9 miles in Trigg County.[1] During the pursuit, Plaintiff was observed ignoring multiple stop signs, exiting the roadway, hitting a tree, driving through a parking lot, and driving through several yards and ditches, all while still refusing to yield to the lights and sirens.[2] Plaintiff

---

[1] Deposition of Jared Kennedy, p. 89 (Exhibit A).
[2] Deposition of Micah Kaminski, pp. 70-71, 92-94 (Exhibit B); Deposition of Gary Hicks, p. 45-46 (Exhibit C).

filed this lawsuit based on the use of force used during his arrest immediately after this pursuit. *See generally* [R. 27]. Plaintiff makes claims against Sheriff Acree for alleged violation of his Fourth Amendment rights under 42 U.S.C. § 1983 as well as for the state law torts of assault, battery, and intentional infliction of emotional distress. *Id.* at ¶¶61–84. Sheriff Acree is entitled to summary judgment on these claims against him because (1) his actions were objectively reasonable, barring the individual § 1983 claim, (2) Plaintiff has failed to allege and present a policy, barring the official § 1983 claim, (3) Sheriff Acree is entitled to qualified official immunity on the individual state law claims, and (4) Sheriff Acree is entitled to sovereign immunity on the official state law claims. Further, to the extent co-Defendants' motions for summary judgment are applicable to Sheriff Acree, he adopts and incorporates those arguments.

## STATEMENT OF THE CASE

On September 19, 2020, Plaintiff was observed speeding by a Cadiz police officer, Officer Kaminski, who attempted to stop him.[3] Plaintiff did not stop and began driving recklessly through yards, ditches, parking lots, and a golf course.[4] Deputy Hicks caught up with Plaintiff and observed him swerving in and out of lanes, noting severe damage to Plaintiff's vehicle.[5] Despite having lights and sirens activated, Plaintiff refused to pull over.[6] Plaintiff testified he was aware he was being pursued by law enforcement, with lights and sirens activated.[7] Based on his observations, Deputy Hicks believed Plaintiff was under the influence and was possibly operating a stolen vehicle.[8] Therefore, he contacted Sheriff Acree, advising of the above.[9] Sheriff Acree authorized

---

[3] KYIBRS Report, p. 5 (Exhibit D).
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] Kennedy Dep., p. 67, 70.
[8] KYIBRS Report, p. 5
[9] *Id.*

pursuit intervention technique when safe to do so, based on Plaintiff's erratic and unsafe behavior.[10] Plaintiff continued to flee, leading the pursuit down windy roads, much of which was unlit.[11]

The requested pursuit intervention technique, a PIT maneuver, was used and safely ended the pursuit, though only momentarily.[12] This maneuver entailed Deputy Hicks placing the front end of his police cruiser on the side of the tail end of Plaintiff's vehicle, accelerating, and turning into Plaintiff's vehicle.[13] Following the successful PIT maneuver, Plaintiff's vehicle stalled, and Deputy Hicks approached Plaintiff's vehicle on foot.[14] Sheriff Acree and Deputy Hicks issued commands for compliance, which Plaintiff ignored.[15] Plaintiff drove away, beginning the second portion of the pursuit.[16] The pursuit eventually ended in a driveway.[17] However, Plaintiff still refused to exit his vehicle.[18] The location where the pursuit ended was unfamiliar to the officers present.[19] Deputy Hicks testified that, because they were at an unfamiliar home and uncertain whether Plaintiff intended to access a weapon there, it was necessary to approach Plaintiff quickly and gain control before anyone was injured.[20] Sheriff Acree testified that a suspect fleeing from police in the dark and continuing to evade capture even after a PIT maneuver posed a physical threat to the officers.[21]

---

[10] *Id.*
[11] *Id.*
[12] *Id. See also* Hicks Dep., p. 45-47.
[13] Deposition of Aaron Acree, p. 125-126 (Exhibit E).
[14] Hicks Dep., p. 47; Kennedy Dep., p. 77.
[15] KYIBRS Report, p. 5; Hicks Dep., p. 47, Acree Dep., 202-203.
[16] KYIBRS Report, p. 5.
[17] *Id.*
[18] *Id.*
[19] Kaminski Dep., p. 157; Hicks Dep., p. 118.
[20] Hicks Dep., p. 118.
[21] Acree Dep., p. 254.

Deputy Hicks opened the driver's side door and pulled Plaintiff out of the vehicle.[22] Sheriff Acree and Deputy Hicks issued verbal commands for compliance, which Plaintiff refused.[23] It was unknown at that time whether Plaintiff was armed.[24] It is undisputed that Deputy Hicks issued hand strikes to gain compliance and, when that was unsuccessful, Sheriff Acree issued baton strikes.[25] They eventually gained compliance, and Deputy Hicks handcuffed Plaintiff.[26] No force was used after Plaintiff was handcuffed.[27] Plaintiff was ultimately charged with multiple offenses, including fleeing or evading police, resisting arrest, wanton endangerment, and others, and he spent forty-nine days in jail before pleading guilty to wanton endangerment, criminal mischief, and failure to maintain insurance. [R. 27 at ¶¶43–45, 50].

Based on these events, Plaintiff brings four claims: violation of his Fourth Amendment rights under 42 U.S.C. § 1983 (*Id.* at ¶¶61–69); state law battery against Acree and Hicks (*Id.* at ¶¶70–74); state law assault against Acree and Hicks (*Id.* at ¶¶75–80); and state law intentional infliction of emotional distress against all three defendants (*Id.* at ¶¶81–84). He seeks compensatory and punitive damages, costs, attorney's fees, and a jury trial. *Id.* at ¶¶85–92. For the reasons stated herein, Sheriff Acree is entitled to summary judgment for Plaintiff's claims against him.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[22] KYIBRS Report, p. 5.
[23] *Id. See also* Kennedy Dep., p. 100.
[24] Hicks Dep., p. 75.
[25] Acree Dep., p. 158.
[26] KYIBRS Report, p. 5.
[27] Kennedy Dep., p. 118.

56(a). When determining a motion for summary judgment, the Court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

## ARGUMENT

**I.    Sheriff Acree committed no excessive force and violated no constitutional rights, thus entitling him to summary judgment on the individual Section 1983 claims.**

Count I asserts a § 1983 excessive force claim against Sheriff Acree individually and officially. To reach the core excessive force analysis, however, the governing framework must be identified and navigated. Plaintiff's § 1983 excessive force claim takes several steps to fully distill. Once the operative standard emerges and is applied, the record will establish that Sheriff Acree is entitled to summary judgment as a matter of law.    To reach the core excessive force issue, putting together the governing framework begins with three general §1983 liability principles:

First, "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012).

Second, qualified immunity is an available defense to § 1983 claims against individually sued government officials. *Johnson v. Fankell*, 520 U.S. 911, 914 (1997). A two-pronged analysis results from the qualified immunity overlay: (1) Did the defendant violate the plaintiff's constitutional right; and (2) If so, was the infringed right "clearly established" at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court has discretion to

consider either prong in any order. *Id.* at 236. Simply raising the qualified immunity defense places the burden on Plaintiff to overcome both prongs. *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014).

Third, with every § 1983 claim, "it is necessary to isolate the precise constitutional violation" at issue. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Count I alleges excessive force and unreasonable seizure, specifically identifying Acree and Hicks "beating him while he was under their custody and control…" [R. 27, ¶ 64]. All police seizures involving excessive force are subject to the Fourth Amendment reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Having covered the three general § 1983 liability principles, fully constructing the governing framework requires attention to one more area: Orienting the expansive Fourth Amendment reasonableness standard to the particular facts of this case. A claim that a law enforcement officer used excessive force during a stop or arrest is analyzed under the Fourth Amendment, which requires that the force deployed be objectively reasonable from "the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396. The seminal *Graham* decision marks the starting point, setting three firmly embedded parameters.

> First: "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." 490 U.S. at 396.
>
> Second: "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.
>
> And third: "[T]he question is whether the officers' actions are 'objectively reasonable'" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id.* at 397.

Within these well-established Graham contours, all other circumstances are taken into account. To help focus the open-ended analysis, Graham offered three specific factors to consider:

(1) the severity of the crime at issue; (2) whether the subject poses an immediate threat to the safety of the officers or others; and (3) whether the subject is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396. The "ultimate inquiry," in the regular case, is "whether the totality of the circumstances justified the use of force." *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015).

The inquiry into the reasonableness of police force requires analyzing the "totality of the circumstances." *County of Los Angeles v. Mendez*, 581 U. S. 420, 427-428 (2017); *Tennessee v. Garner*, 471 U. S. 1, 9 (1985). That analysis demands "careful attention to the facts and circumstances" relating to the incident. *Graham*, 490 U. S., at 396.

The "totality of the circumstances" inquiry has no time limit. *Barnes v. Felix*, 605 U.S. 73 (2025). While the situation at the precise time of the use of force matters, earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones. *Id.* The consideration of earlier events can show why a reasonable officer would perceive even otherwise ambiguous conduct as threatening. *Id.* at 73-74.

The Sixth Circuit has recognized the reasonableness of the use of force and the lack of a clear constitutional violation in a case like this one. In *Williams v. Ingham*, the plaintiff filed an excessive force claim, pursuant to 42 U.S.C. § 1983, against multiple officers. 373 F. App'x 542, 543 (6th Cir. 2010). The plaintiff's claim was based on the officers' use of force during two incidents of arrest. *Id.* at 543–45. During the second incident, plaintiff "led the officers on a high-speed car chase through residential neighborhoods" and ran several stop signs and red lights. *Id.* When the plaintiff's vehicle eventually came to a stop, the officers, one of which had his weapon drawn, approached the car and gave the plaintiff "several commands to show his hands and exit the vehicle." *Id.* The plaintiff did not comply with these commands, causing the officers

7

to forcibly remove the plaintiff from the car. *Id.* To execute the plaintiff's removal from the vehicle, officers jabbed the plaintiff's upper torso, struck his mid-thigh with a baton, grabbed his arms, and took him to the ground. *Id.* Once on the ground, the plaintiff "struggled to keep his hands concealed underneath his body." *Id.* "[T]o gain control of [the plaintiff's] hands, officers "placed [a] baton between [the plaintiff's] left upper arm and torso and rotated it in a circular motion," struck the plaintiff's middle back twice with fists, and, after all the other unsuccessful attempts, delivered a drive stun to the plaintiff's lower back with a taser. *Id.* at 544. After tasering the plaintiff, officers were able to place the plaintiff's hands in handcuffs, and no additional force was used. *Id.*

On appeal, the Sixth Circuit found the officers' use of force to be reasonable. *Id.* at 548. Specifically, the Court concluded the officers' use of force was necessary given the plaintiff's "potential safety threat to the officers" and his general noncompliance, which collectively consisted of (1) ignoring verbal directives to exit the vehicle; (2) ignoring verbal commands to show his hands; and (3) struggling to prevent officers from obtaining control of his hands by burying them beneath his body. *Id.* As a result, the Court ruled the officers' use of force was "objectively reasonable" and, therefore, not in violation of the plaintiff's constitutional rights. *Id.*

Based on the facts presented in this case, Sheriff Acree's use of force was objectively reasonable. The Sixth Circuit has held that an officer's baton strikes were objectively reasonable when they were intended to control a resisting suspect. *Frodge v. City of Newport*, 501 F. App'x 519, 531 (6th Cir. 2012). Critically, the baton strikes, applied to the lower body, were in response to Plaintiff's defiant actions, including resisting arrest and refusing to comply with verbal commands.[28] Rather than showing his hands, Plaintiff had his arms under his body.[29] Plaintiff

---

[28] Acree Dep., pp. 156-157.
[29] Kennedy Dep., pp. 98-99, 100.

testified he was using his arms to push off the ground and keep his body off the ground.[30] Additionally, Sheriff Acree perceived Plaintiff attempting to get back on his feet, based on Plaintiff's refusal to maintain a position on the ground.[31] The baton was utilized by Sheriff Acree because Plaintiff was not responding to Deputy Hicks' hand strikes.[32] A review of the totality of the circumstances demonstrates that this use of force was reasonable.

Additionally, though not referenced in the Complaint or Plaintiff's testimony, Plaintiff's expert, who Defendants are seeking to exclude, asserts that Sheriff Acree delivered a foot strike, or "stomp", during this incident. [R. 54, p. 21]. For the purposes of this motion for summary judgment only, and to eliminate any factual dispute, Defendant will concede that such a foot strike was attempted. Even if said foot strike was attempted and contact was made, this use of force is still reasonable under this analysis. Sheriff Acree's actions were clearly aimed at controlling a resisting suspect whose armed status was unknown.[33] *Graham*, 490 U.S. at 396. A review of the totality of the circumstances demonstrates that Sheriff Acree's use of force was reasonable.

As the *Graham* court indicated, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id*. at 396-97. Further, the reasonableness of Sheriff Acree's actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Taking into account Plaintiff's failure to respond to verbal commands or Deputy Hicks' hand strikes, it was reasonable for Sheriff Acree to employ force in order to bring

---

[30] *Id.*
[31] Acree Dep., pp. 192-193.
[32] Acree Dep., p. 158.
[33] Acree Dep., 157.

the resistance to an end and effect arrest. Therefore, no constitutional violation occurred, and Plaintiff's Fourth Amendment claim must be dismissed.

Additionally, even if this Court is persuaded that a constitutional violation occurred, the infringed right was not "clearly established" at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232. "To be 'clearly established,' existing precedent—either controlling authority or a 'robust consensus of cases of persuasive authority'—must have placed the constitutional question 'beyond debate.'" *Stewart v. City of Euclid*, 970 F.3d 667, 674 (6th Cir. 2020). The Supreme Court has elaborated:

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him .... This requires a high degree of specificity. We have repeatedly stressed that courts must not define clearly established law at a high level of generality ... the specificity of the rule is especially important in the Fourth Amendment context .... Thus, we have stressed the need to identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment. While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [conduct] beyond debate.

*District of Columbia v. Wesby*, 583 U.S. 48, 63–64 (2018)(internal citations omitted). No existing precedent involving an officer acting under similar circumstances would be on notice to retreat to cover or otherwise refrain from using deadly force. It certainly was not "plainly incompetent" for Sheriff Acree to perceive Plaintiff as a threat. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). Therefore, qualified immunity applies.

**II.    Plaintiff's official capacity Section 1983 claim against Sheriff Acree fails because he does not allege a policy or custom that caused the alleged constitutional deprivation.**

Plaintiff has filed a § 1983 claim for damages against Sheriff Acree in his official capacity

as Sheriff as well. As explained by the United States Supreme Court in *Kentucky v. Graham*, 473

U.S. 159 (1985),

> Personal-capacity suits seek to impose personal liability upon a
> government official for actions he takes under color of state law ….
> Official-capacity suits, in contrast, "generally represent only another
> way of pleading an action against an entity of which an officer is an
> agent." … As long as the government entity receives notice and an
> opportunity to respond, an official-capacity suit is, in all respects
> other than name, to be treated as a suit against the entity …. It is not
> a suit against the official personally, for the real party in interest is
> the entity. Thus, while an award of damages against an official in his
> personal capacity can be executed only against the official's personal
> assets, a plaintiff seeking to recover on a damages judgment in an
> official-capacity suit must look to the government entity itself.

*Id.* at 165-66; *see also Clark v. Kentucky*, 22 F.Supp 2d 718, 721 (E.D. Ky. 2002).

Local government entities, including counties, "may be held liable under § 1983 **only**

where its policy or custom causes the constitutional violation in question." *Miller v. Calhoun

County*, 408 F.3d 803, 813 (6th Cir. 2005) (emphasis added) (*citing Pembaur v. City of Cincinnati*,

475 U.S. 469, 482-83 (1986)). Plaintiff's Amended Complaint is devoid of allegations that Trigg

County, its Sheriff's Department, or its Sheriff maintained policies and customs that led to the

alleged constitutional deprivations. Plaintiff's disclosed expert, David Sweeney, brings up policy

in his report. [R. 54, p. 37-38]. However, Defendant has requested exclusion of David Sweeney as

an expert based, in part, on his reliance on these polices. The policies referenced in Mr. Sweeney's

report are (1) a body camera policy and (2) a model policy found on the internet that Trigg County

has not adopted. *Id.* Further, David Sweeney does not opine that the policies led to the alleged

constitutional deprivation, but rather merely calls it a "poor example" and "problematic." *Id.*

The lack of allegations that Defendants had a policy leading to the alleged constitutional deprivation requires dismissal of all § 1983 claims against Sheriff Acree in his official capacity. *See Smith v. Peyman*, 93 F.Supp. 3d 738 (E.D. Ky. 2015) (dismissing all § 1983 claims against a sheriff in his official capacity due to lack of claims that policies or customs led to the alleged constitutional right violation).

### III.    Plaintiff's state law tort claims against Sheriff Acree, individually, fail as he was privileged to take the subject actions and entitled to qualified official immunity.

A district court possesses discretion to exercise supplemental jurisdiction even when the state law claims are all that remain in the case. *Saglioccolo v. Eagle Insurance Co.*, 112 F.3d 226 (6th Cir. 1997). The Sixth Circuit has recognized the propriety of deciding state law claims when there is a "substantial similarity between the predicate factual findings necessary to the resolution of both the federal and state claims." *Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1413 (6th Cir.1991) (internal citations omitted). *United Mine Workers of America v. Gibbs* held that a district court has the power to exercise jurisdiction over pendent state-law claims if the following prerequisites are met: (1) the federal claim must have substance sufficient to confer subject matter jurisdiction on the court, (2) the state and federal claims must derive from a common nucleus of operative fact, and (3) the claims must be such that plaintiff would ordinarily be expected to try them in one judicial proceeding. 383 U.S. 715, 725 (1966). *See also Transcontinental Leasing, Inc. v. Michigan National Bank*, 738 F.2d 163, 165–66 (6th Cir. 1984).

Plaintiff's claims against Defendants meet all three elements. The first element of supplemental jurisdiction as his § 1983 claim is sufficient to confer subject matter jurisdiction on this Court. 28 U.S.C. § 1331. The second element is satisfied because all claims arise out of Plaintiff's arrest by Defendants, which is the common nucleus of operative fact. *See generally* [R.  27]. Finally, Plaintiff's claims meet the third element because Plaintiff would ordinarily be expected to try them

in one judicial proceeding. Accordingly, this Court should exercise supplemental jurisdiction over Plaintiff's state law claims.

Counts II, III, and IV of Plaintiff's Amended Complaint allege Kentucky common law battery, assault, and intentional infliction of emotional distress ("IIED"), respectively. "Assault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky.Ct.App.2001). However, "[p]olice officers generally have a privilege to use reasonably necessary force to preserve order." *Woosley v. City of Paris*, 591 F.Supp.2d 913, 923 (E.D. Ky. 2008); *see also City of Lexington v. Gray*, 499 S.W.2d 72, 74-75 (Ky.1973)(confirming police "right to use force as necessary, or reasonably so appears" in conjunction with claimed "assault and battery"). KRS 503.090 permits an officer to use physical force he or she believes is necessary to make an arrest. Objective reasonableness under the federal Fourth Amendment standard, as previously demonstrated, equally operates to defeat Plaintiff's state common law tort claims. *Woosley*, 591 F.Supp.2d at 923; *Atwell v. Hart County*, 122 F. App'x 215, 219 (6th Cir. 2005)(rejecting liability where the "basis of Appellant Atwell's assault and battery claim were objectively reasonable in the § 1983 context").

Plaintiff's IIED claim clearly arises out of the subject use of force: "… Acree, Hicks, and Kamenski are subject to liability to Kennedy for intentional infliction of emotional distress as Acree and Hicks intentionally exited their vehicles and began to cause fear by pulling Kennedy from his car and beating him to the extent he believed he was going to die." Amended Complaint at ¶ 83. Therefore, when performing a qualified immunity analysis, the three torts of assault, battery, and IIED can be looked at together as they all arise out of the same discretionary act, Sheriff Acree's use of force.

Similar to federal qualified immunity, Kentucky common law extends qualified official immunity to individually sued public officials when performing (1) discretionary acts, (2) in good faith, and (3) within the scope of their authority. *Morales v. City of Georgetown*, 709 S.W.3d 146, 154 (Ky. 2024); *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Regarding the first element, police use of force is a discretionary act. *Grant v. Wilson*, No. 619-CV-00165, 2021 WL 2636010, at \*11 (E.D. Ky. June 25, 2021)("It is well established that a police officer's decision of **how much force is required in a particular situation is a discretionary act**."); *Northern-Allison v. Seymour*, 2020-CA-0637-MR, 2021 WL 1164438, at \*3 (Ky. App. Mar. 26, 2021). This memorandum has already addressed that the use of force was reasonable. Additionally, case law and the record support that the use of force was a discretionary act.[34] *Id.* Sheriff Acree was faced with making a split-second decision on what and how to use force to contain a suspect resisting arrest.[35] The Supreme Court of Kentucky has made clear that the decision to use force, "**whether it was the correct decision or not**," is a discretionary act deserving of qualified official immunity. *Morales*, 709 S.W.3d at 156.

Under the second element, the record supports no subjective or objective bad faith finding under the second element. Once the officer or employee has shown that the act was performed within the scope of his or her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith. *Yanero*, 65 S.W.3d 510, 523 (Ky. 2001). Therefore, Sheriff Acree does not bear the burden of proving his actions were in good faith, but rather the Plaintiff must prove the acts were in bad faith. For the third element, there's no dispute that Sheriff Acree was on-scene acting within the scope

---

[34] Deposition of William Payne, 79-80,100-102, 124-125 (Exhibit F).
[35] *Id.*

of his employment. All qualified official immunity elements are accordingly satisfied. Therefore, Counts II and III of Plaintiff's Complaint must also be dismissed.

**IV.     Plaintiff's state law tort claims against Sheriff Acree, officially, are barred by sovereign immunity.**

Plaintiff asserts state law torts discussed in the section above against Sheriff Acree, in both his individual and official capacities. However, "[u]nder Kentucky law, public officials sued in their official capacity 'are cloaked with the same immunity as the government or agency he/she represents.'" *Schwindel v. Meade Cty.*, 113 S.W.3d 159, 169 (Ky. 2003) (citing *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)); *see also Wheeler v. Ward*, No. 3:19-CV-00059-GNS-CHL, 2020 WL 1442904, at *5 (W.D. Ky. Mar. 24, 2020) ("When sued in their official capacities, [sheriff and deputy sheriff] are cloaked with sovereign immunity[.]"). As a result, Count III must be dismissed to the extent it alleges state law tort claims against Sheriff Acree in his official capacity. *See Murphy v. Bruner*, No. 5:17-CV-376-KKC, 2018 WL 2392510, at *4 (E.D. Ky. May 25, 2018) (dismissing "[plaintiff's] state law claims as against [the sheriff and his deputies] in their official capacit[ies]" because they "are barred by sovereign immunity.").

**CONCLUSION**

For the reasons stated herein, Defendant Sheriff Acree respectfully requests that this Court dismiss Plaintiff's claims against Sheriff Acree with prejudice.

Respectfully submitted,

*/s/ L. Scott Miller*
L. Scott Miller, KBA No. 91232

15

J. Tyler Chelf, KBA No. 99988
Emily B. Pence, KBA No. 99149
L.S. Miller Law, PLLC
333 West Vine Street, Suite 1720
Lexington, KY 40507
(859) 456-2244
lsmiller@lsmlaw.com
tchelf@lsmlaw.com
epence@lsmlaw.com
*COUNSEL FOR DEFENDANT,*
*AARON ACREE*

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

 */s/ L. Scott Miller*
*COUNSEL FOR DEFENDANT,*
*AARON ACREE*